# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### 18-cv-1003

| | | |
|---|---|---|
| **STANLEY JOSEPH** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **WASTE MANAGEMENT OF SOUTH** | ) | |
| **CAROLOINA, INC., WASTE** | ) | |
| **MANAGEMENT RESOURCES, INC,** | ) | |
| **WASTE MANAGEMENT OF** | ) | |
| **CAROLINAS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

The plaintiff, Stanley Joseph, complaining of defendants, alleges the following:

## NATURE OF ACTION

1.      Plaintiff has instituted this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq*., *as amended*, (hereafter "ADA"), the Uniform Services Employment and Reemployment Act of 1994, 38 U.S.C. §§ 4301, *et seq*. (USERRA), and North Carolina law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1331, 38 U.S.C. § 4323(d), and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

3. Venue is proper in this District under 38 U.S.C. § 4323(d).

4. Venue is also proper in this District pursuant to 28 U.S.C. §1391(b), insofar as the events and or omissions giving rise to plaintiff's claims occurred in North Carolina's Middle District.

## PARTIES

5. The plaintiff, Stanley Joseph, is a resident of Johnston County, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendants within the meaning and definitions of the ADA, 42 U.S.C. § 12111(4), and USERRA, 38 U.S.C. § 4303 (4)(a).

6. The defendant, Waste Management of South Carolina, Inc. is a corporation established pursuant to the laws of South Carolina engaged in providing waste management services and products throughout North Carolina, South Carolina and Georgia. At all times pertinent to this action, defendant employed over 100 employees, and was the "employer" of plaintiff within the meaning and definitions of the ADA, 42 U.S.C. § 12111(5)(A) and USERRA, 38 U.S.C. § 4303 (4)(a).

7. The defendant, Waste Management Resources, Inc is a corporation established pursuant to the laws of South Carolina engaged in providing waste management services and products throughout North Carolina and South Carolina. At all times pertinent to this action, defendant employed over 100 employees, and was the "employer" of plaintiff within the meaning and definitions of the ADA, 42 U.S.C. § 12111(5)(A) and USERRA, 38 U.S.C. § 4303 (4)(a).

2

8.     The defendant, Waste Management of Carolinas, Inc. is a corporation established pursuant to the laws of South Carolina engaged in providing waste management services and products throughout North Carolina and South Carolina.  At all times pertinent to this action, defendant employed over 100 employees, and was the "employer" of plaintiff within the meaning and definitions of the ADA, 42 U.S.C. § 12111(5)(A) and USERRA, 38 U.S.C. § 4303 (4)(a). The parties will collectively be referred to hereafter as "defendant."

## FACTS

9.     Plaintiff, 53, is an African American male and a decorated veteran of the United States Air Force (USAF), proudly serving his country following his high school graduation in 1986 until 2006.

10.     During his military service plaintiff obtained a bachelor's degree from Park University and a Master's degree from Arkansas University.

11.     Plaintiff was recognized for his outstanding service in the USAF and was one of the youngest to ever hold the rank of Senior Master Sergeant. Plaintiff led a battalion into active combat deployments in Iraq in 2005-2006, participating in the "troop surge" during Operation Iraqi Freedom.

12.     Plaintiff was awarded the Bronze Star for meritorious combat service in Iraq and was honorably discharged from the USAF in November 2006.

## PLAINTIFF'S DISABILITY

13.    Plaintiff suffers from Chronic Post-Traumatic Stress Disorder (PTSD) as a result of his military service and was diagnosed in 2006.  Plaintiff has an 80% service-connected disability rating as determined by the United States Veterans Affairs (VA).  PTSD affects his ability to: concentrate; regulate mood; moderate and manage anxiety; prevent intrusive thoughts; and approach certain people, places, and situations. PTSD also creates migraine headaches and can cause anxiety attacks, shortness of breath, and acute chest pains.  Plaintiff's mental and physical impairment constitutes a substantial limitation of his major life activities of thinking, concentrating, breathing, interacting with others, and communicating. Further, plaintiff's mental and physical impairment substantially limits his brain function.

14.    Plaintiff's disability can be reasonably accommodated in order for plaintiff to perform his job duties. Plaintiff had successfully managed his disability for approximately twelve years, with plaintiff using prescription medication, therapy, and counseling to manage his condition.

15.    Defendant was aware of plaintiff's service-connected disability and disability rating during the entire course of plaintiff's employment.

## Plaintiff's Employment with Defendant

16.    Plaintiff was initially employed with defendant starting in November 2006.  Due to plaintiff's excellent performance, he was promoted to Operations Manager at

4

defendant's Winston-Salem location.  From 2006 to 2010 plaintiff met or exceeded the reasonable expectations of his role as reflected in his performance evaluations.

17.     In 2010, as a result of plaintiff's excellent performance, plaintiff was asked to join defendant's Public Sector sales division in a sales capacity. Plaintiff's new role included sales of waste management services and oversight of defendant's service agreements with municipalities and public entities. Plaintiff's sales territory extended throughout western North Carolina and included Winston-Salem and the Charlotte region, with his office remaining in Winston-Salem.  Plaintiff was paid a base salary and placed on a commission structure established by defendant.

18.     Plaintiff flourished in his role and was continually recognized as one of the top salespersons within defendant's organization nationally, grossing over 300 million dollars for defendant during his employment with defendant.

19.     Plaintiff was recognized as an "Emerald Circle" winner for quarterly sales production 15 times and nominated to the "Circle of Excellence," based upon annual sales production, 5 times from 2010 until the end of plaintiff's employment. Plaintiff was specifically recognized by defendant's Chief Executive Officer for his excellent sales performance and recognized as a top-five sales performer for defendant nationally in 2015 and 2017 and the top performer for plaintiff's market area from 2014-2017.

20.     By every objective measure, plaintiff's sales record and performance met or exceeded the reasonable expectations of his role in defendant's Public Sector sales division.

5

21.     In addition to his job duties, defendant requested plaintiff to give interviews to media publications about defendant's commitment to veterans and participate in recruiting efforts of veterans to apply for employment with defendant.

**Discrimination against Plaintiff as a Result of His Military Service and Disability**

22.     Beginning in 2012, plaintiff began being supervised by a new direct supervisor, the Market Area Director (MA Director) for the Public Sector Services. The MA Director, Caucasian, was aware of plaintiff's veteran status and history of decorated military service.

23.     The MA Director was not responsible for the hiring or previous promotions of plaintiff.

24.     The MA Director continually made comments to plaintiff about his military service, including in 2014 that plaintiff's direct supervisor disliked working with veterans and did not like to hire them.

25.     Further, plaintiff was told on multiple occasions by the MA Director that plaintiff's colleagues and members of management "did not trust" plaintiff and plaintiff was "different" than his colleagues. Pressed for more explanation, the MA Director refused to clarify his comments.

26.     During an annual review in 2014, The MA Director stated that he disliked working with veterans because veterans couldn't "lead" and that veteran employees couldn't just "court martial people here" if an employee of defendant chose not to follow a directive.

6

27.     In early 2015, months after the discriminatory comments from the MA Director about plaintiff's military service, plaintiff was denied commissions owed to him as a result of sales during the 2014 sales year by the MA Director. When the MA Director refused to acknowledge or compensate plaintiff for his commissions pursuant to defendant's stated policies and commission formula, plaintiff appealed to defendant's management utilizing defendant's internal grievance appellate process regarding commissions.

28.     Following a successful appeal, in April 2015, plaintiff was awarded some additional commissions owed by defendant's management but remained unpaid for commissions from a sale of services to a municipality during the 2014 year totaling approximately $81,000.00

29.     Following plaintiff's successful appeal, he continued to experience harassment from his direct supervisor as a result of his military service, disability, and "going over the head" of the MA Director to appeal the commissions owed.

30.     During plaintiff's appeal of the commission issue, plaintiff informed defendant's Human Resources (HR) department of the discrimination he had been subjected to as a result of his military service and veteran status, and informed plaintiff feared retaliation from the MA Director.

31.     Defendant's HR made assurances that no such retaliation would occur and HR would "check in" with plaintiff and facilitate a meeting with plaintiff's Area Vice President. No such meeting ever occurred, nor did HR ever "check in" to ensure further

discrimination and retaliation did not occur. As a result of HR's failure to take any corrective action, the harassment and discrimination continued.

32.    In November 2015 plaintiff continued to be subjected to discrimination and retaliation as a result of his military service and called for a meeting with HR representatives to again ask for action to be taken. HR refused to act or provide any further support.

33.    Despite the discrimination plaintiff was subjected to, plaintiff continued to perform at or above the reasonable expectations of his position, far exceeding his sales goals for 2015 and 2016.

34.    In December 2016 plaintiff was informed by the MA Director via phone that the commission structure was again changing, which would now cap plaintiff's commissions and prevent a signed and executed contract of a client transaction closed by plaintiff during the 2016 calendar year, representing over 300% of plaintiff's revenue growth goals for the year, from being counted towards his commission and bonus compensation for that sales year.

35.    The MA Director further stated that defendant may be eliminating the "growth revenue" quota for 2017, which would eliminate any chance for compensation for plaintiff as a result of the client transaction in the following sales year.

36.    The MA Director, at his discretion, later determined that the execution of a sales contract would count to Public Sector sales representatives' commission goals for

8

2017, but failed to provide compensation or properly credit the transaction to plaintiff in any form. As a result, plaintiff was denied nearly over $70,000 in commissions.

**Plaintiff's Complaints of Discrimination and Requests for Reasonable Accommodation**

37.     Following a failure of defendant to address any of plaintiff's complaints, plaintiff had a re-occurrence of his PTSD symptoms beginning in the fall of 2016.

38.     In March 2017, plaintiff notified defendant that as a result of the discrimination and the symptoms on his PTSD, plaintiff would be seeking reasonable accommodations. Defendant failed to do any further investigation or engage with plaintiff on how to reasonably accommodate his disability.

39.     On May 16, 2017 plaintiff filed a "Workplace Retaliation Grievance" (Grievance) in which plaintiff detailed his military history, his service-connected disability, and that the MA Director was discriminating against plaintiff and creating a hostile work environment.

40.     The May 16, 2017 Grievance further detailed the MA Director's statements about his dislike of plaintiff's military service and that a pattern of behavior in which the MA Director was attempting to discriminate and "push out" plaintiff from defendant's organization despite plaintiff's excellent sales performance year after year.

41.     In the May 16, 2017 Grievance plaintiff requested reasonable accommodations from defendant which included:

9

a. a discussion about a possible transfer to work under another supervisor or change to another department due to persistent discrimination, harassment, and a hostile work environment;

b. a request for an impartial and independent review of plaintiff's complaints regarding discrimination, retaliation, and compensation issues;

c. a modified work schedule to pursue medical treatment for his PTSD symptoms.

42.     Plaintiff indicated in his request for accommodations that he was willing to discuss "any and all options to keep the stability of my current position."

43.     Defendant did not substantively respond to plaintiff for nearly two months and refused to accommodate any of plaintiff's requests. Despite plaintiff's repeated requests for accommodation and willingness to provide medical documentation associated with plaintiff's disability, defendant was neither willing to engage in the interactive process nor willing to provide him with accommodations.

44.     When defendant finally responded through a representative in their legal department in late July 2017, plaintiff's symptoms had worsened, and he was directed by his treating physicians to take leave to address his worsening PTSD symptoms including anxiety attacks and nightmares.

45.     Plaintiff requested, and was granted, leave from July 24, 2017 until the last week of August 2017 pursuant to the Family Medical Leave Act (FMLA).

10

46.     Plaintiff returned to work and continued to perform his job duties, despite discriminatory and retaliatory actions from his direct supervisor as a result of filing the May 16, 2017 Grievance.

47.     On October 9, 2017 plaintiff filed Equal Employment Opportunity Commission (EEOC) Charge # 430-2018-00150, alleging race, sex, disability, and retaliation against defendant. The charge included reference to a hostile work environment.

48.     Following the filing the filing of EEOC Charge # 430-2018-00150, plaintiff continued to experience retaliation as a result of filing complaints internally and with the EEOC.

49.     On December 19, 2017, over six months after requesting reasonable accommodations, plaintiff was formally notified by defendant that they were denying his requests for reasonable accommodations and was threatened with disciplinary action by defendant's HR representative and Area Vice President.

50.     On December 27, 2017 plaintiff wrote again to defendant's HR department, describing the discrimination and retaliation he was subjected to as a result of filing the May 17, 2017 Grievance. Plaintiff indicated that he objected to being discriminated because of being "different," referencing the language used the MA director which were references to his service-connected disability, veteran status, and race.

51.     On January 22, 2018, plaintiff wrote defendant's Chief Operating Officer, detailing the history of discrimination and retaliation faced by plaintiff as a result of his

11

veteran status, service-connected disability, and retaliation from reporting discriminatory employment practices internally and to the EEOC. Plaintiff received no substantive response from defendant's Chief Operating Officer or any member of his office.

52.     As a result of ongoing discrimination and retaliation, plaintiff's medical condition worsened, and he was required to seek further medical treatment for his PTSD.

53.     As a result of the discrimination and retaliation from plaintiff's direct supervisor and defendant, plaintiff suffered intense emotional distress which impacted his physical well-being and ability to perform his job functions.

54.     On March 2, 2018 plaintiff wrote to the HR Director assigned to plaintiff's market area informing that plaintiff was unable to continue to work as a direct result of the retaliation and "workplace induced mental anguish" plaintiff was subjected to.

55.     Plaintiff further stated that as a result of defendant's failure to engage in an interactive process with plaintiff regarding his request for reasonable accommodations or address the discrimination plaintiff had endured for years because of his military service and service-connected disability, plaintiff had been subjected to a hostile work environment causing damage to his family, health, and exacerbating his disability.

56.     Plaintiff stated he desired to work for defendant for at least a decade to come but the hostile work environment and failure of defendant to act to address the discrimination and retaliation effectively led to plaintiff's constructive discharge.

12

## ADMINISTRATIVE REMEDIES

57.     On or about October 9, 2017 plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) (EEOC Charge # 430- 2018-00150) in its Charlotte, North Carolina office.  Plaintiff's charge alleged disability, race, and gender discrimination and retaliation. The charge alleged a hostile work environment as well.

58.     On January 20, 2018, the parties held a mediation and an impasse was declared.

59.     On May 29, 2018, plaintiff filed an Amended Charge for EEOC Charge # 430-2018-00150 alleging disability, race, and gender discrimination along with retaliation. The charge alleged a hostile work environment as well.

60.     On May 29, 2018, plaintiff filed EEOC Charge # 435-2018-00818 alleging disability, race, and gender discrimination along with retaliation. The charge alleged a hostile work environment as well.

61.     Following investigation, A Right to Sue was issued for EEOC Charge # 430-2018-00150 on September 5, 2018 and for EEOC Charge # 435-2018-00818 on September 27, 2018 respectively.

62.     Plaintiff has complied with all procedural prerequisites to filing this action.

### FIRST CLAIM FOR RELIEF
### Disability Discrimination in Violation of the ADA

63.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

13

64.     The ADA requires that a qualified individual with a disability be reasonably accommodated to enable him to perform the essential functions of his job in the absence of proof of some undue hardship.

65.     At all times pertinent to this action, plaintiff was a qualified individual with a disability, and was regarded as having a disability by defendant, who because of a mental impairment, suffers a substantial limitation of his life activity of thinking, concentrating, and communicating. Plaintiff's disability limits his brain function.

66.     Defendant, and their agents and representatives, wrongfully and intentionally discriminated against plaintiff because of his disability, in violation of the ADA, on a continuing basis, as follows:

a.  In failing to engage in a good-faith, reasonable, interactive process to determine reasonable accommodations to enable plaintiff to continue to work;

b.  In failing to address or respond to plaintiff's requests for over six months for meetings and information related to plaintiff's request for reasonable accommodations as a result of a service-connected disability;

c.  In denying plaintiff reasonable accommodations which would have enabled him to continue to work in his position as a public sales representative;

d.  In the alternative, in failing to identify other positions or departments which were available for plaintiff to work with defendant or their organization;

14

e. In constructively discharging plaintiff from his position as result of his disability for failing to reasonably accommodate plaintiff.

67. As a proximate result of defendant's illegal acts of disability discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

68. Plaintiff is entitled to appropriate relief pursuant to the ADA, including compensatory damages and reasonable attorneys' fees and costs for his representation herein pursuant to 42 U.S.C. § 12117(a).

69. Defendant engaged in disability discrimination against the plaintiff with reckless indifference to his federally protected rights. Accordingly, plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b).

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of the ADA

70. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

71. As alleged above, plaintiff filed a complaint with defendant on May 19, 2017 and with the EEOC (EEOC Charge # 430-2018-00150) on October 9, 2017 alleging disability discrimination.

72. Defendant, and their agents and representatives, wrongfully and intentionally retaliated against plaintiff because of his disability, in violation of the ADA, as follows:

15

a. In failing to engage in a good-faith, reasonable, interactive process to determine reasonable accommodations to enable plaintiff to continue to work;

b. In decreasing plaintiff's compensation by not paying all commissions and bonuses owed due to plaintiff's sales performance for complaining of disability discrimination;

c. In failing to address or respond to plaintiff's requests for over six months for meetings and information related to plaintiff's request for reasonable accommodations as a result of a service-connected disability;

d. In retaliating against plaintiff for the May 19, 2017 Grievance and filing EEOC Charge # 430-2018-00150 alleging disability discrimination which included threatening disciplinary action and reducing plaintiff's customers impacting plaintiff's ability to earn commissions;

e. In creating a hostile work environment which included a constructive discharge of plaintiff from his employment.

73.    As a proximate result of defendant's illegal acts of disability discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

16

74.     Plaintiff is entitled to appropriate relief pursuant to the ADA, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 12117(a).

75.     Defendant engaged in disability retaliation against the plaintiff with reckless indifference to his federally protected rights.  Accordingly, plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b).

## THIRD CLAIM FOR RELIEF
### Discrimination in Violation of USERRA

76.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

77.     The actions of defendant, as set forth in herein, constitute intentional discrimination and harassment of plaintiff as a result of his military service.

78.     USERRA prohibits discrimination in employment against individuals who have been called to duty or have previously performed uniformed service.  Specifically, 38 U.S.C. §4311 provides that an employee may not be denied a "benefit of employment" because of the employee's membership or former membership in uniformed service.

79.     "Benefit of employment" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or any employer policy, plan, or practice, including awards, bonuses, severance pay, vacations, and the opportunity to select work hours or location of

17

work.   As that term is broadly defined, this includes freedom from harassment and the ability to work in an environment free from discrimination, harassment, and retaliation. 38 U.S.C. §4303(2).

80.     Plaintiff's military service and status as a veteran was a motivating factor in defendant's actions in discriminating, and/or constructively discharging plaintiff, and/or creating a hostile work environment as a result of his uniformed service with the USAF and subsequent honorable discharge.

81.     Defendant discriminated against plaintiff in violation of USERRA as follows in:

    a.  Creating a hostile work environment as a result of plaintiff's prior military service;

    b.  Intentionally not providing commissions and bonuses, a benefit of employment to plaintiff, owed to him as a result of his sales performance from the 2014 and 2016 sales years and as outlined above;

    c.  Making disparaging remarks regarding veterans and plaintiff's veteran status intentionally causing emotional distress;

    d.   Purposefully and intentionally not providing reasonable accommodations to plaintiff because of his service-connected disability and disability rating;

    e.  Denying employment benefits to plaintiff, including compensation earned and owed to plaintiff;

    f.   Failing to determine if plaintiff was able to perform other positions as

18

required by USERRA.

82. As a direct and proximate cause of defendant's actions plaintiff has suffered injuries and damages including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering.

83. Such violations of USERRA by defendant were willful and plaintiff is entitled to an award of liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C).

## FOURTH CLAIM FOR RELIEF
### Retaliation in Violation of USERRA

84. Plaintiff incorporates the foregoing paragraphs of this complaint as if set forth fully herein.

85. 38 U.S.C. §4311(b) prohibits retaliation for having taken an action to enforce a protection afforded to an individual under USERRA or for having exercised a right provided for under USERRA.

86. Plaintiff was retaliated in violation of USERRA in:

a. Plaintiff was subjected to an ongoing pattern of harassment and retaliation, including but not limited to, being mocked and ridiculed regarding his military service after plaintiff attempted to enforce his rights under USERRA;

b. Plaintiff was subjected to a hostile work environment following the filing of a Grievance;

c. Plaintiff was further subjected to an adverse action and retaliated against in

19

being constructively discharged as a result of complaining and filing a Grievance for discrimination as a result of his prior military service and veteran status;

d. Plaintiff was denied the employment benefit of having an interactive process or investigation of plaintiff's request for reasonable accommodations and/or claims of discrimination based upon his uniformed service;

e. Plaintiff was denied earned commissions earned due to his sales performance as outlined above in the 2014 and 2016 sales years;

f. In failing to determine if plaintiff was able to perform other positions as required by USERRA.

87. Plaintiff's uniformed service was a motivating factor in defendant's actions of retaliation and were designed to discourage him from trying to enforce his rights under USERRA.

88. As a direct and proximate cause of defendant's violations Plaintiff has suffered injuries and damages including but not limited to, loss of past and future earnings, loss of past and future benefits, damage to professional reputation, and undue pain and suffering.

89. Such violations of USERRA were willful and entitles plaintiff to an award of liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C).

20

## FIFTH CLAIM OF RELIEF
### Intentional Infliction of Emotional Distress

90.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

91.    As described above, defendant engaged in conduct designed and calculated to discriminate, harass, molest and intimidate plaintiff, including the following:

    a.    Continuous disparaging and mocking comments about plaintiff's military service;

    b.    Intentionally creating a hostile work environment in which plaintiff suffered mental and physical harm;

    c.    Failing to investigate or take necessary steps to prevent plaintiff from further harassment, discrimination and intimidation from the MA Director with knowledge of the adverse physical and mental symptoms suffered by plaintiff.

92.    The actions of defendant, as described above, were extreme and outrageous, and exceeded the bounds tolerated by civilized society.

93.    In its above actions, defendant intended to inflict and did, in fact, inflict severe emotional distress upon plaintiff.

94.    As alleged above, defendant is liable for its employee's acts against plaintiff in that they committed such conduct in the course of their employment; and

21

defendant acquiesced in, condoned, and ratified said conduct, and failed to take reasonable action to protect plaintiff.

95.     As a proximate result of the unlawful actions of defendant, plaintiff suffered lost income and benefits, severe emotional distress and other losses, for which she is entitled to compensatory damages.

96.     The actions of defendant was willful, wanton, and malicious, and entitle plaintiff to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes. Aggravating circumstances are alleged above in paragraphs 9 through 56.

## SIXTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

97.     Plaintiff hereby incorporate the foregoing paragraphs as if fully set forth herein.

98.     The defendant owed a duty to plaintiff to exercise reasonable care to protect him from their employee's wrongful actions against plaintiff.  Defendant violated this duty by failing and refusing to take prompt action to discipline its employees or otherwise to prevent their wrongful conduct.

99.     Plaintiff suffered severe emotional distress as a result of the misconduct of defendant.

100.     As a proximate result of the negligence of defendant, plaintiff suffered lost income, benefits, severe emotional distress and mental anguish, and other losses, for which he is entitled to compensatory damages.

101. The actions of defendant constituted gross negligence and reckless indifference to the rights of plaintiff and entitle plaintiff to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes. Aggravating circumstances are alleged above in paragraphs 9 through 56.

## PRAYER FOR RELIEF

The plaintiff hereby requests the following relief:

A.     That plaintiff be reinstated to his position with defendant;

B.     That plaintiff recover of defendant back pay, economic losses and restoration of all benefits;

C.     That plaintiff recover of defendant compensatory damages in an amount in excess of $100,000;

D.     That plaintiff recover of defendant punitive damages in an amount to be determined by the jury;

E.     That plaintiff recover liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C);

F.     That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein, as required by 42 U.S.C. §12117(a) and 38 U.S.C. § 4323(h)(2);

G.     That this Court grant such other relief deemed just and appropriate.

23

**Request for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues presented herein.


This the 3rd day of December 2018.

/s/Daniel C. Lyon
Daniel C. Lyon (42806)
Elliot Morgan Parsonage, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC  28203
Phone: (704) 707-3705
E-Mail: dlyon@emplawfirm.com
